UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THOMAS BADOLATO | ) | Case No. 09-12628-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| LENA BADOLATO | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1131 |
| | ) | |
| THOMAS BADOLATO | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This is an action by the debtor's former wife to determine the dischargeability of a judgment growing out of a mediated settlement agreement incorporated into a divorce decree. A trial was held without a jury on March 5, 2010. The plaintiff and the defendant were each present in person and represented themselves.[1] For the reasons stated, the court determines that a Florida judgment entered against the debtor is nondischargeable. This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure and Rule 52(a), Federal Rules of Civil Procedure.

---

[1] The plaintiff, Lena Badolato, appeared by video teleconference from the Middle District of Florida Bankruptcy Court.

1

Background

The defendant, Thomas Badolato ("the debtor"), filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on April 6, 2009, and received a discharge of his dischargeable debts on July 20, 2009.  Among the liabilities listed in his schedules is one to his former wife, Lena Badolato, for $26,546.  The present adversary proceeding was filed by Ms. Badolato on May 22, 2009, to determine the dischargeability of her claim against the debtor.

The parties were divorced by a final judgment of dissolution of marriage entered on February 7, 2007 by the Circuit Court of Florida's Ninth Judicial Circuit (the "Florida court").  A mediated settlement agreement had been entered into on January 25, 2007, and was incorporated into the divorce decree.  Relevant to the present controversy, the settlement agreement distributed the four properties the plaintiff and debtor owned during their marriage and a 2006 Regal boat and trailer. Specifically, it provided for Ms. Badolato's exclusive use of property located at 11901 Cantora Court, the debtor's exclusive use of property located at 13164 Summerton Drive, and the rental property—located at 13117 Summerton Drive—to continue to be rented.  Although the agreement is somewhat ambiguous, the plaintiff testified—and a later property settlement agreement confirmed— that under the January settlement agreement Mr. Badolato was responsible for paying one half of the mortgage on the 11901 Cantora Court property, the mortgage and associated costs on the 13164 Summerton Drive property, and one-fourth of the mortgage on the rental property.  The debtor was also to receive the couple's 2006 Regal boat and trailer.[2]

---

[2] The debtor was responsible for making payments on the boat and obtaining refinancing in his own name within ninety days of the agreement.

At trial, the plaintiff testified that the debtor never made any of the required payments under the mediated settlement agreement and that she made his share of the payments. A second property settlement agreement called "Joint Stipulation Regarding Property" was entered into by the parties in April 2007. The April 2007 agreement required, among other things, that the plaintiff execute a quit claim deed in favor of the debtor for the 13117 Summerton Drive property and the debtor to execute a quit claim deed in favor of the plaintiff for the 11901 Cantora Court property. Moreover, under the April 2007 agreement the debtor was to assume responsibility for all charges associated with the 13117 Summerton Drive and 13164 Summerton Drive properties. The plaintiff was to make the 2006 Regal boat available to the debtor and the debtor was to provide the plaintiff with proof that within two weeks of gaining possession of the boat he refinanced it and removed her name from the title. *See* Plaintiff's Exhibit 2.

Some time after the April 2007 agreement was entered into, the debtor picked up the boat through an intermediary, but testified that he was unable to obtain refinancing. After he could not refinance the boat, and after an order by the Florida court for the debtor to return the boat to Ms. Badolato, he dropped it off at the Boat Tree, which is where the Badolatos bought the boat. Plaintiff's Exhibit 4. Mr. Badolato testified that he made one payment around February 2007, but did not make any other payments on the boat loan. According to her testimony, Ms. Badolato made payments on the boat during the period that the debtor was responsible for making the payments. Ms. Badolato also testified that she paid the mortgages for the Summerton Drive properties, during the time that the debtor was responsible for making these payments.

Ms. Badolato eventually moved the Florida Court for transfer or possession of the debtor's real and personal property and in October 2007, the Florida court awarded Ms. Badolato a $17,000 civil judgment for payments she made on the Summerton Drive properties' mortgages and on the boat loan.  After non-payment of that judgment, Ms. Badolato then filed a motion for civil contempt against the debtor, and on March 25, 2008, the Florida court awarded her a judgment of $24,316.80 plus interest at 11% per annum.  The March judgment included the $17,000 from the October 2007 judgment and damages of one-half of $14,633.59[3] for the debtor's failure to make payments on the boat or return it to Ms. Badolato. *See* Plaintiff's Exhibit 5.

The debtor puts forward a number of equitable arguments to show he should not be required to make any payments to Ms. Badolato.  He questions the amount owed under the March 2008 judgment, although he does not deny that he failed to make payments to Ms. Badolato.  The debtor justifies his failure to pay the judgment by alleging that the plaintiff herself did not comply with her obligations under the property settlement agreement.  Finally, he also claims that he was not aware of the Florida proceedings in which plaintiff received the judgments against him and that he was not personally served.  In November of 2009, he filed a motion in the Florida court to vacate the March 2008 judgment and the October 2007 judgment.  On November 20, 2009, the Florida court denied his motion.

---

[3] The Florida court calculated the payments Ms. Badolato made on the boat to be $14,633.59 and the debtor's share to be one-half or $7,316.80.

Discussion

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  A determination of the determination of the dischargeability of debt is a core proceeding in which a final judgment may be entered by a bankruptcy judge.  28 U.S.C. § 157(b)(2)(I).  Venue is proper in this district under 28 U.S.C. § 1409(a).  The defendant has been properly served and has appeared generally.

II.

A chapter 7 discharge does not discharge a debtor from debt owed to a "former spouse . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." § 523(a)(15), Bankruptcy Code.  The plaintiff bears the burden of proving that the debt owed by the debtor is to a former spouse and that it arose in the context of a divorce proceeding or separation agreement. *In re Holmes*, No. 08-3113, 2009 WL 1586792, *2 (Bankr. N.D. Ohio February 20, 2009).

The plaintiff's evidence plainly shows that the March 2008 judgment of the Florida court liquidates the debtor's obligations after his failure to comply with the divorce decree, which incorporated the property settlement agreement.  Indeed, the plaintiff testified that the Florida court calculated the payments the plaintiff made on the debtor's share after the debtor's failure to abide by the property settlement agreement to determine the judgment amount of $24,316.80.

The equitable arguments put forth by the debtor to the effect that the plaintiff did not comply with her own obligations under the settlement agreement are not part of the determination of issues under § 523(a)(15), Bankruptcy Code, but should instead be directed to the Florida courts. Because the debt owed by the debtor to Ms. Badolato was incurred in the course of a divorce and property settlement agreement, it is nondischargeable.[4]

A separate judgment will be entered consistent with this opinion.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Lena Badolato
P.O. Box  895215
Leesburg, FL 34789
Plaintiff *pro se*

Thomas Badolato
250 South Reynolds Street #1411
Alexandria, VA 22304
Defendant *pro se*

---

[4] Because a money judgment has already been entered by the state court, this court's judgment is limited to a determination of dischargeability. *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253 (4th Cir. 2001) (holding that bankruptcy court did not have jurisdiction to enter money judgment in connection with determination of dischargeability where claim had already been reduced to judgment in state court).